IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TIMOTHY P. MARTINEZ, <br> KENNETH D. KIRKLAND, <br> and ALISON L. MITCHELL <br><br> On Behalf of Themselves And <br> All Others Similarly Situated, <br><br> Plaintiffs, <br><br> vs. <br><br> JPMORGAN CHASE BANK, N.A., <br> JPMORGAN CHASE & CO. <br><br> Defendants. | § § § § § § § § § § § § § § § § | <br><br><br><br><br><br><br><br> CIVIL ACTION NO. 3:10-cv-2575 <br><br> JURY TRIAL DEMANDED |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiffs, Timothy P. Martinez, Kenneth D. Kirkland, and Alison L. Mitchell, on behalf of themselves and all others similarly situated, by and through counsel, for their Complaint against Defendants JPMorgan Chase Bank, N.A. and JPMorgan Chase & Co. (collectively as "JPMorgan" or "Defendants") state as follows:

## INTRODUCTION

1. Plaintiffs bring this collective class action under 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA") on behalf of themselves and all other current and former JPMorgan Chase Home Lending Retail Sales In-Footprint Mortgage Loan Officers employed by Defendants outside of California in the last three years (the "Collective Action Class").

2. Defendants' policy and practice is to deny earned wages including overtime pay to its Retail Sales In-Footprint Mortgage Loan Officers. In particular, Defendants require these

---

**Plaintiffs' Original Complaint – Page 1**

employees to perform work which greatly exceeds forty (40) hours per week, but fails to pay them overtime by illegally classifying them as exempt from the Fair Labor Standards Act's ("FLSA") overtime requirements.

3.     Defendants' deliberate illegal classification of its Retail Sales In-Footprint Mortgage Loan Officers as exempt from minimum wage and overtime requirements results in Defendants violating the FLSA.

## JURISDICTION AND VENUE

4.     This court has original federal question jurisdiction over Plaintiffs' FLSA claims pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

5.     The United States District Court for the Northern District of Texas, Dallas Division has personal jurisdiction over Defendants because Defendants conduct business within this district.

6.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 inasmuch as Defendants have offices, conduct business, and can be found in the Northern District of Texas, a substantial part of the events giving rise to the claims occurred in this district, and Plaintiffs reside in this district.

## PARTIES

7.     Defendant parent firm JPMorgan Chase & Co. is a Delaware Corporation with its principal place of business in New York, New York.  Defendant JPMorgan Chase & Co. is a financial services firm with $2.0 trillion in assets and $100.4 billion in revenue in 2009. JPMorgan Chase & Co. serves its customers through its J.P. Morgan and Chase brands in this judicial district and worldwide.  *See* JPMorgan Chase & Co. 2009 Annual Report, *available at*

http://files.shareholder.com/downloads/ONE/1068199613x0x362439/a51db960-bda2-4e30-aacd-3c761b81ba75/2009_AR.pdf, *see also* JPMorgan Chase & Co., *available at* www.jpmorganchase.com.

8. Defendant JPMorgan Chase & Co.'s U.S. consumer and commercial banking businesses operate under the Chase brand. Defendant JPMorgan Chase Bank, N.A. is a nationally chartered bank with its principal place of business in Columbus, Ohio. Defendant JPMorgan Chase Bank, N.A. is a Chase brand subsidiary of parent company Defendant JPMorgan Chase & Co.

9. The Chase brand consumer banking businesses include all branches and automated teller machines, telephone and online banking, credit cards, small businesses, home finance and home equity loans, auto finance, education finance, retirement and investing, and retail checking. The Chase brand commercial banking businesses include lending, treasury services, investment banking, asset management, commercial real estate banking, business credit, equipment finance, commercial term lending, and community development. *See* JPMorgan Chase & Co., Our Businesses, *available at* http://www.jpmorganchase.com/corporate/About-JPMC/client-solutions.htm.

10. Defendants own and operate more than 5,100 Chase branches in 23 states which collectively had earnings of $3.9 billion in 2009. *See* JPMorgan Chase & Co. 2009 Annual Report, *available at* http://files.shareholder.com/downloads/ONE/1068199613x0x362439/a51db960-bda2-4e30-aacd-3c761b81ba75/2009_AR.pdf.

11. Plaintiff Timothy P. Martinez currently resides in Dallas, Texas. Defendants have employed Plaintiff Martinez from December 17, 2003 until the present time. Since October 15,

**Plaintiffs' Original Complaint – Page 3**

2009, Defendants have employed Plaintiff Martinez as a Retail Sales In-Footprint Loan Officer at Defendants' Lewisville Civic branch located at 1201 Main Street, Lewisville, Texas, 75067.

12. Plaintiff Kenneth D. Kirkland currently resides in Dallas, Texas. Defendants employed Plaintiff Kirkland from June 9, 2008 until February 28, 2009, as a Retail Sales In-Footprint Loan Officer at Defendants' Plaza of the Americas and Main and Akard branches in Dallas, Texas.

13. Plaintiff Alison L. Mitchell currently resides in Bedford, Texas. Defendants employed Plaintiff Mitchell from December 3, 2008 to September 2010 as a Retail Sales In-Footprint Loan Officer at several of Defendants' the most recent of which is the Flower Mound branch located 2021 Long Prairie Rd., Flower Mound, Texas.

## STATEMENT OF FACTS

14. Defendants offer personal financial services including mortgages to individual consumers at over 5,100 bank branches in 23 states nationwide. Defendants claim that this makes them the second largest bank branch operator in the United States. *See* JPMorgan Chase & Co. 2009 Annual Report, *available at*

http://files.shareholder.com/downloads/ONE/1068199613x0x362439/a51db960-bda2-4e30-aacd-3c761b81ba75/2009_AR.pdf

15. Defendants employ Retail Sales In-Footprint Mortgage Loan Officers throughout the 23 states in which they have bank branches.

16. As of November 16, 2010, Defendants employed approximately 2,425 Retail Sales In-Footprint Mortgage Loan Officers at its bank branches nationwide.

17. Defendants classified Plaintiffs and its other Retail Sales In-Footprint Mortgage Loan Officers nationwide under the same internal job code: HSRTKA - HL RTL Loan Officer In-Mkt.

18. Defendants compensated Plaintiffs and its other Retail Sales In-Footprint Mortgage Loan Officers nationwide under the same compensation plan which is entitled Retail Sales In-Footprint Loan Officer Incentive Plan ("Loan Officer Incentive Plan"). In fact, the Loan Officer Incentive Plan states that "[a]ll In-Footprint Loan Officers are eligible "Participants" under the Plan."

19. Defendants issued two Loan Officer Incentive Plans during 2010. The first such Plan became effective on January 1, 2010, and the second such plan became effective on May 1, 2010.

20. Pursuant to Defendants' Loan Officer Incentive Plan, Defendants paid Plaintiffs and other Retail Sales In-Footprint Mortgage Loan Officers nationwide two types of compensation: (1) monthly incentives, and (2) quarterly bonuses.

21. The monthly incentives Defendants paid Plaintiffs and other Retail Sales In-Footprint Mortgage Loan Officers nationwide included a "Minimum Monthly Compensation" which is a set dollar amount paid twice a month.

22. Defendants paid Plaintiffs and other Retail Sales In-Footprint Mortgage Loan Officers in 20 states a $2,000 per month non-recoverable draw against incentives under the Loan Officer Incentive Plan; the first half, $1,000, paid on the 15th of the month, and the second half, $1,000, paid on the last day of the month.

23. Defendants paid Retail Sales In-Footprint Mortgage Loan Officers in three states slightly higher minimum monthly compensation amounts. Defendants paid these amounts in the same manner it paid all other Retail Sales In-Footprint Mortgage Loan Officers nationwide.

24. Defendants provided Plaintiffs and other Retail Sales In-Footprint Mortgage Loan Officers nationwide with pay statements which specify these employees' gross earnings, deductions, taxes withheld, net pay, and other pay related information.

25. Defendant's name "JPMorgan Chase & Co." appeared at the top of these pay statements. Further, Defendant's name "JPMorgan Chase Bank" also appeared on these pay statements.

26. Plaintiffs and other Retail Sales In-Footprint Mortgage Loan Officers nationwide regularly worked in excess of 40 hours per week in an effort to earn compensation under Defendants' Loan Officer Incentive Plan.

27. Plaintiffs and other Retail Sales In-Footprint Mortgage Loan Officers nationwide were required to work from 8:00 a.m. to 6:00 p.m. Monday through Friday, and from 9:00 a.m. to 3:00 p.m. on Saturday, totaling 56 hours each week.

28. In addition, Plaintiffs and other Retail Sales In-Footprint Mortgage Loan Officers nationwide often worked one to two hours each weekday evening at home.

29. Plaintiffs and other Retail Sales In-Footprint Mortgage Loan Officers nationwide were also required to attend "Call Nights" and "Super Saturdays" which were mandatory after-hours marketing programs organized by managers.

30. The primary job duty of Plaintiffs and other Retail Sales In-Footprint Mortgage Loan Officers nationwide is to sell mortgages to individual consumers.

31. Retail Sales In-Footprint Mortgage Loan Officers (1) did not regularly supervise the work or two or more employees, (2) did not exercise discretion and independent judgment as to matters of significance or perform office work related to Defendants' general business operations or those of its customers, and (3) had no advanced knowledge in a field of science or learning which required specialized instruction that was required to perform their jobs.

32. All Retail Sales In-Footprint Mortgage Loan Officers nationwide are similarly situated in that they share common duties and descriptions, Defendants have paid and continue to pay them according to its Loan Officer Incentive Plan, and Defendants have designated them all as exempt such that they worked significant amounts of overtime without being paid overtime compensation.

33. All Retail Sales In-Footprint Mortgage Loan Officers nationwide spent virtually all of their work time in their bank branch offices. They took phone calls from their desks at their branch office, from their car commuting to and from the office, or from home.

34. Defendants failed to take any action to ensure or monitor whether Retail Sales In-Footprint Mortgage Loan Officers nationwide worked outside of their offices.

35. In fact, Defendants were fully aware that its Retail Sales In-Footprint Mortgage Loan Officers nationwide spent virtually all of their work time in their bank branch offices and taking phone calls because Defendants' management saw these employees in their branches day after day.

36. In addition, Defendants' management required its Retail Sales In-Footprint Mortgage Loan Officers nationwide work in their bank branch offices every workday. For example, a VP Senior Lending Manager of Defendants sent out an email in October 2010 which stated " . . . we have a full time job and we are to be at our assigned branches every day. . .

37. Retail Sales In-Footprint Mortgage Loan Officers nationwide did not sell mortgages at individual mortgage consumers' places of business or homes. Instead, Retail Sales In-Footprint Mortgage Loan Officers nationwide sold mortgages to individual consumers who walked into Defendants' bank branches and to individual consumers who contacted Defendants' bank branches via telephone or internet.

38. Defendants fail to accurately record the work time of its Retail Sales In-Footprint Mortgage Loan Officers nationwide. Defendants could easily and accurately record the work time of its Retail Sales In-Footprint Mortgage Loan Officers nationwide.

39. Retail Sales In-Footprint Mortgage Loan Officers including at least one Plaintiff formally complained to Defendants' Chase Human Resources Department regarding their misclassification as exempt employees and Defendants' failure to pay them overtime.

40. At least one Retail Sales In-Footprint Mortgage Loan Officer sent Defendants' Human Resource Department an opinion letter issues by the United States Department of Labor's Wage and Hour Division which states that the typical mortgage officer is a non-exempt employee entitled to overtime pay under the FLSA and requested that Defendants pay him in compliance with the FLSA. *See* U.S. Department of Labor Administrator's Interpretation No. 2010-1, *available at* http://www.dol.gov/WHD/opinion/adminIntrprtn/FLSA/2010/FLSAAI2010_1.pdf.

41. Defendants' Human Resources Department dismissed this complaint without explanation and failed to substantiate the manner in which Defendants pay their Retail Sales In-Footprint Mortgage Loan Officers nationwide.

42. Defendants have failed to change the manner in which they pay their Retail Sales In-Footprint Mortgage Loan Officers nationwide after the Wage and Hour Division

Administrator's recent opinion letter which states that the typical mortgage officer is a non-exempt employee entitled to overtime pay under the FLSA.

43. Defendants have been the subject of numerous FLSA collective actions which have challenged Defendants' compensation practices in regards to loan officers, mortgage underwriters, and other employees. Despite these lawsuits, Defendants continue misclassify their Retail Sales In-Footprint Mortgage Loan Officers nationwide and refuse to pay them overtime.

44. Defendants' policy and practice of classifying their Retail Sales In-Footprint Mortgage Loan Officers nationwide as exempt and denying them overtime pay lacks good faith and willfully violates the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

45. Plaintiffs bring Count I, the FLSA claim, as an opt-in collective action pursuant to 29 U.S.C. § 216(b) on behalf of all persons who are or were formerly employed by Defendants in the last three years outside of California as Retail Sales In-Footprint Mortgage Loan Officers, Defendant's internal national job code HSRTKA, HL RTL Loan Officer In-Mkt, and who were not paid the legally required overtime wages (the "Collective Action Members").

46. Plaintiffs, on behalf of themselves and all others similarly situated, seek relief on a collective basis challenging Defendants' practice of failing to accurately pay its Retail Sales In-Footprint Mortgage Loan Officers nationwide (excluding those in California) for all overtime hours worked. The number and identity of other plaintiffs yet to opt-in and consent to be party

plaintiffs may be determined from Defendants' records and potential Collective Action Members may easily and quickly be notified of the pendency of this action.

47. Plaintiffs will fairly and adequately protect the interests of the Collective Action Members and has retained counsel that is experienced and competent in the fields of wage and hour law and class action litigation. Plaintiffs have no interest that is contrary to or in conflict with those members of this collective action.

48. A collective action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by individual Collective Action Members may be relatively small, and the expense and burden of individual litigation make it virtually impossible for the members of the collection action to individually seek redress for the wrongs done to them.

49. Questions of law and fact common to members of the collection action predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members. Among the questions of law and fact common to Plaintiffs and other Collective Action Members are:

   a. whether the Defendants employed the Collective Active Members within the meaning of the FLSA;

   b. whether Defendants failed to pay the Collective Action Members overtime premiums for all of the hours worked in excess of forty (40) hours per workweek in violation of the FLSA;

   c. whether Defendants' violations of the FLSA are willful as that term is used within the context of the FLSA; and

      d.    whether Defendants are liable for all damages claimed hereunder, including but not limited to overtime compensation, statutory liquidated damages, interests, costs, and attorneys' fees.

50. Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

### COUNT I
### VIOLATION OF THE FAIR LABOR STANDARDS ACT OF 1938
### BROUGHT AGAINST DEFENDANTS BY PLAINTIFFS INDIVIDUALLY AND BEHALF OF ALL OTHERS SIMILARLY SITUATED

51. Plaintiffs, on behalf of themselves and all Collective Action Members, re-assert the allegations set forth in the above paragraphs.

52. Plaintiffs bring Count I, the FLSA claim, as an opt-in collective action pursuant to 29 U.S.C. § 216(b) on behalf of themselves and all others similarly situated.

53. Plaintiffs' consents in writing to be parties to this action pursuant to 29 U.S.C. § 216(b) are attached.

54. Former Retail Sales In-Footprint Mortgage Loan Officer Martin A. Saladin opts into this cause of action pursuant to 29 U.S.C. § 216(b) and his written consent to do so is attached.

55. Former Retail Sales In-Footprint Mortgage Loan Officer John W. Frankowski opts into this cause of action pursuant to 29 U.S.C. § 216(b) and his written consent to do so is attached.

56. The FLSA regulates, among other things, the payment of overtime by employers whose employees are engaged in commerce, or engaged in the production of goods for

commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 207(a)(1).

57. At all relevant times, Defendants have been, and continue to be, subject to the overtime pay requirements of the FLSA because they are engaged in commerce. 29 U.S.C. §§ 203(b), 203(s)(1).

58. At all relevant times, Plaintiffs and all Collective Action Members have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq*.

59. At all relevant times, Plaintiffs and all Collective Action Members were employees of Defendants pursuant to 29 U.S.C. § 203(e).

60. Section 13 of the FLSA, codified at 29 U.S.C. § 213, exempts certain categories of employees from overtime pay obligations. Neither Plaintiffs nor any Collective Action Member performed job duties or tasks or were paid in such a manner as to exempt them from overtime compensation as required by the FLSA. None of the FLSA exemptions apply to Plaintiffs or any Collective Action Members.

61. The FLSA requires that employers, such as Defendants, compensate all non-exempt employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty (40) hours in a workweek.

62. Defendants failed to compensate Plaintiffs and all Collective Action Members at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty (40) hours in a workweek and, therefore, are in violation of the FLSA. 29 U.S.C. § 207(a)(1).

63. Plaintiffs and all Collective Action Members are entitled to damages equal to the mandated overtime premium pay within the three years preceding the filing of this Complaint because Defendants acted willfully and knew, or showed reckless disregard of whether, their conduct was prohibited by the FLSA.

64. Defendants have acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and, as a result thereof, Plaintiffs and all Collective Action Members are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime pay described pursuant to Section 16(b) of the FLSA, codified at 29 U.S.C. § 216(b).

65. As a result of the aforesaid willful violations of the FLSA's overtime pay provisions, overtime compensation has been unlawfully withheld by Defendants from Plaintiffs and all Collective Action Members. Accordingly, Defendants are liable pursuant to 29 U.S.C. § 216(b) for overtime compensation, together with an additional amount as liquidated damages including the employer's share of FICA, FUTA, state unemployment insurance, and any other required employment taxes, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs, on behalf of themselves and all other similarly situated Collective Action Members, respectfully request that this Court grant the following relief:

a. designation of this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice of an FLSA opt-in class, pursuant to 29 U.S.C. § 216(b) to all similarly situated members, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by

        filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b), and tolling the statute of limitations;

b.     a declaratory judgment that the practices complained of herein are unlawful under the FLSA;

c.     an award of unpaid overtime compensation due under the FLSA;

d.     an award of liquidated damages pursuant to 29 U.S.C. § 216(b);

e.     an award of damages representing the Defendants' share of FICA, FUTA, state unemployment insurance, and any other required employment taxes;

f.     an award of prejudgment and post-judgment interest;

g.     an award of costs and expenses of this action together with reasonable attorneys' fees and expert fees; and

h.     any further relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the Complaint.

        Respectfully submitted,

        /s/ *Rowdy B. Meeks*

        _____
        Rowdy B. Meeks
        KS Bar No. 16068
        (*pro hac* motion pending)
        Rowdy Meeks Legal Group LLC
        4717 Grand Ave., Suite 840
        Kansas City, Missouri  64112
        Tel:    (816) 531-2277
        Fax:   (816) 531-7722
        Rowdy.Meeks@RMLegalGroup.com
        www.rmlegalgroup.com

/s/ *J. Derek Braziel*

_____

J. Derek Braziel
State Bar No. 00793380
Meredith Mathews
State Bar No. 24055180
Lee & Braziel, LLP
1801 N. Lamar St., Suite 325
Dallas, Texas 75202
Tel: (214) 749-1400
Fax: (214) 749-1010
JDBraziel@L-B-Law.com

**ATTORNEYS FOR PLAINTIFF**

**Plaintiffs' Original Complaint – Page 15**